and let Mr. Perry get it from him. All right, sir, you may go ahead. Thank you, Your Honor. May it please the court, counsel, my name is Jack Peacock, and I represent the appellant, Nita Page, as administratrix of the estate of Jacob Willard, deceased. The estate was the plaintiff in the trial court, Chase was the defendant, and the case was dismissed on a 12B6 motion of Chase, of course, before any discovery could be done. I'd like to focus on what I believe are our strongest points, so I won't be discussing the entire brief unless the court has questions about some things. But it seems to me that this case really involves the tension between Rule 8 of the Federal Rules of Civil Procedure and Twombly and Ashcroft. Under Rule 8, of course, it just simply says that the plaintiff has to give fair notice to the defendant of the plaintiff's claims. In Twombly and Ashcroft, the U.S. Supreme Court cases, of course, say in brief that the claims have to be plausible on their face. They have to be facially plausible. So therein lies the difficulty. We still have Rule 8, but at the same time, the claims have to be plausible on their face. So it's become difficult at times, especially since when a motion to dismiss is filed, typically in these kinds of cases, these mortgage cases, the defendant has not filed an answer. So there's no discovery, and you can't get discovery until the motion to dismiss is decided, and then the defendant has to file an answer. Then we can get discovery. So very often it's very difficult to elaborate extensively in the complaint without the benefit of any discovery. So I understand that there's a balance there, and our contention is, of course, that based upon Rule 8 and upon Twombly and Ashcroft, some of these theories of recovery that are listed in the plaintiff's First Amendment complaint are sufficient. And as a matter of fact, in the course of the argument today, I'll point out a case which was mentioned by counsel in their letter brief that was sent to the court, I believe, the day before yesterday, where the facts are very similar, but the court in that case, which was, I'll just go ahead and mention it. It's the Uzo Denma versus J.P. Morgan Chase. Counsel, one of the lawyers in her firm, represented Chase in that case. In a motion to dismiss by Judge Lindsey in Dallas, he did not dismiss one of the claims of the plaintiff, which was based upon the Texas Debt Collection Act, on facts very similar to what we have here. So I understand there's a lot of discretion, but my point is that in a close call, a plaintiff should at least get the benefit of the doubt because you can't do discovery until an answer has been filed. And in fairness to plaintiffs— So what claim do you at least have that close call on? Oh. Okay. I don't know if the court has the transcript, but on page 142 of the transcript, I'll just read. There's two statements in particular that I believe were sufficient. Starting on page 142, which is paragraph 18 of plaintiff's first submitted complaint, that paragraph states, On May 26, 2010, Nita and Kenneth Page sent a letter to Chase explaining the hardship and why the primary mortgage payment had become delinquent. They explained the sudden and unexplained increase of monthly payments and taxes were the cause. All right. We know from the pleading that the real estate lien note called for payments of approximately $1,300 a month. But in this pleading that we had filed, plaintiff's first submitted complaint, it shows that the payments had suddenly jumped to over $3,000 a month. Well, on its face, we all know that the real estate lien note and the deed of trust are contracts. That's undisputed. Didn't the payment go up so much because Chase paid the outstanding property taxes, and that's what your client really wanted was to spread that repayment to Chase of the money they fronted for your client's taxes. They wanted to spread that out for three years. I mean, Chase is doing you a favor. They're paying taxes that they don't even owe. I mean, it just seems, I know, you know, usually the issue in these cases is the mortgage itself isn't being paid. Why do you even have the right to tell, after Chase has paid your bill, to get some grace from them and say, oh, we don't have to pay you back, though, until three years from now? Well, I agree with you, Your Honor. I mean, in fairness, certainly that needs to be repaid, no question about that. But what we don't know is why the payment doubled, more than doubled, and that was done suddenly and unexplained. All right. I agree that taxes were paid by Chase, typically in every case they are, in the escrow. But they're funded through, yeah, through the client paying the escrow. That's right, Your Honor. And so on its face, there's a breach of contract. The other point that I wanted to— that you needed more discovery on. Is this one of those points? It is. And what would you say you needed discovery on that's either not mentioned in the complaint or otherwise wasn't available at the 12B6 stage? Well, the first thing we would do would be get the documents from the other side, for example, the transaction history from that. Are you saying it's disputed at the pleading stage that the taxes and maybe it's escrowed insurance, too, went unpaid? Is that something that you say could not be ruled on on 12B6? Well, in our pleadings, it's clear that Chase had paid taxes. And, of course, that's what they were supposed to do. So are you disputing the amount? I mean, it is breathtaking, no doubt, if you thought you could pay $1,300 and now you're supposed to pay $3,000 plus. But are you saying there's a dispute over the amount and perhaps that was the wrong amount and there was a breach of the deed of trust, promissory note, for that reason? Absolutely. I mean, when your payments are more than doubled and the documents themselves call for one payment, I mean, arguably, Chase might be right. I can't say without doing discovery whether they're right or wrong. Why do you even need discovery to get the payment history on a loan? I mean, you don't even have to file a lawsuit. You call up your bank and say, oh, I need to see this payment history. Please send it to me. Did your client try that? I don't know if she tried that, but typically— Did you try it? Just call up the bank and say, we want our payment history? I don't think you need a court-ordered discovery for that. I'd love to, but when we got the case, they were already foreclosing. They were within, like, 14 days of foreclosing. There's no time to get any of that. You have to run down there and ask a court to give you a restraining order to stop the foreclosure. Then you can do the discovery and try to sort all this out. But until that time, the bank is under no obligation to send anyone a transaction history unless you send a RESPA letter, a qualified written request. And then they have 30 days to respond and 60 days to get the transaction history to you. Mr. Peacock, I have a question about your first issue, at least one of your earlier issues. What's this argument you're making about governing law provision? You don't have any assertion of a particular violation of governing law, do you? Well, yes, we do. The Texas Debt Collection Act. Okay. So you're saying a violation of that breached the deed of trust? Well, we believe that it does, but— Is this in the deed of trust or in the note? It's in the deed of trust. Okay. Yes, Your Honor. I am seeing the cases that are trending away from agreeing with our position that that would constitute a breach of the deed of trust. So I'm not even going to—I wasn't even going to argue that. I'm not trying to— I was going to waive that provision. Revive an argument you're not planning to make. Please proceed. Thank you, Your Honor. There's one thing I'm confused about you might be able to help clear up. Ms. Page, I understand she filed suit. She runs the estate of the deceased. But she's also living in the house? I mean, was the house given to her in the will? No, Your Honor. There was no will. She's an administratrix of the estate. When her dad died, I don't know exactly when she and her husband and family moved into the property. But I know that her mother lives in North Carolina. And so at some point, she and her husband moved into the property. But the wife under the—if there's no will, the property goes to the wife? Under probate law, yes. Even though the property was just deeded to him, but it was deeded to him when they were married. So now the wife signed the deed of trust, but that's typically the case whenever there's a married couple and the lender wants to be sure that there's not going to be a homestead issue if they try to foreclose. So they have the wife sign, or the spouse, whether it could be the other way, sign the deed of trust. But in this case, the property was just deeded to Mr. Woollard, and he signed the note and the deed of trust, and his wife joined in the deed of trust. I don't know if that answers your question, but that's the background on this. The other item that I believe qualifies as a plausible claim comes from further down the page on page 143 in paragraph 19. On February 3, 2011, Nita Page received a letter in the mail from McCarthy, Holtus, and Ackerman. The letter was an attempt to collect the debt on loan number 15, so forth, in the amount of $250,580.76. Another letter dated the same day in regards to the same loan stated the amount due to be $25,239.68. So my question automatically becomes, well, which is it? Has the loan been accelerated or not? Has this $25,000 that they say due, is this the 30-day demand or not? And so what we've got here is another problem, which is plausible on its face that we have either a breach of contract or a violation of the Texas Debt Collection Act, or both. So my point is, we have enough here to at least do discovery in the case, to try to sort everything out, and what we've done is we have put forth to the court a claim that's plausible on its face. Let me get, oh, I'm out of time. Well, I hate to stop you about the crescendo there, but you've reserved some time for rebuttal, and hopefully you'll hold your point and make it to us. I will. Thank you, Your Honor. Thank you, sir. All right, I don't want to mispronounce it. Is it shoot or shout? Scout. Uh-oh, I was going to really butcher it anyway. I'm sorry. That's all right, you're in good company. All right. May it please the Court, my name is Marcy Scout, and I represent the lender J.P. Morgan Chase Bank. One of the things I think is important to note in this case is that the estate is the plaintiff, and that's something that gets muddied a lot in the actual allegations in the complaint and in the briefing. But when you focus on the estate being the actual plaintiff, I think it clarifies some of the damages, issues, and other things that play in this case. I had a much broader oral argument prepared, but based on the argument that was given, I want to focus on the two paragraphs that Mr. Peacock has identified. With regard to the proper motion to dismiss standard, this Court has repeatedly stated what the proper motion to dismiss standard is. The complaint has to plead enough facts to state a claim for relief that's plausible on its face. The complaint must allege enough facts to move the claim across the line from conceivable to plausible. Determining whether the plausibility standard has been met is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. And that's from the Leal v. McHugh case from this Court in 2013. That's a standard that applies. This argument that, well, we were at the initial stages, we would need some discovery, doesn't really hold water against the allegations here. The plaintiff had plenty of information to make specific factual allegations. If there were specific conversations where she felt Chase misrepresented things to her, certainly she knows the content of those communications. If she feels she was damaged as a result of representations made or conduct with regard to this loan, certainly she knows how she was damaged. But there aren't any allegations about those things, and those aren't matters that you would need discovery on to be able to allege. Well, what about paragraph 18, 19, whichever one it is? As Mr. Peacock just said, extraordinary increase in the monthly payment. I'm not sure it was correct. What's your thought on that? Sure, Your Honor. And I don't know what cause of action that necessarily goes to. But when you look at all the allegations here, not just that one paragraph, if you look at the allegations that precede that, there's this whole history about, in the beginning of 2009, they were starting to experience hardships. They were looking for a waiver of an escrow payment. There was payment of deficient taxes in 2008. They admit payment of taxes in 2008. In paragraph 16 of almost $11,000 of deficient taxes were paid. The bank had been contacting them about, you're going to have to make up that shortage. She wanted to spread it out further than the bank was willing to allow. So there really is no, when you look at all those allegations, there's no real mystery to why the payment went up to $3,400 come August. There's this tax deficiency that had been made, and also then escrow payments were going to need to be made going forward so that there'd be a full bucket to pay taxes as they came due each year. So there really is nothing about that. The other issue there is— Misrepresenting the amount of a debt, though, could be actionable under the TDCA. I mean, if it's properly put, you're saying you weren't sure what cause of action. Wouldn't that be actionable under the TDCA if there were sufficient allegations that the amount of the debt were being misrepresented? Certainly, Your Honor. If they could meet the other elements of a TDCA claim, which includes showing how you were causing damages as a result. Here, there's no allegations of damages. If you look at the actual TDCA claim that's alleged in the complaint, the TDCA claim alleges that there were unauthorized charges because the plaintiff never should have been put into fault. And so late fees, penalties, things of that nature should never have been charged. There's no discussion of this increase, or there's no contesting that this was the proper amount of the monthly payment after the escrow issues were taken into account. There's just no allegation about that. And there's no allegation— What the district court found with regard to the TDCA claim— And again, I think— This is a 12B6 claim. The complaint is where we start and end here. If you look at the TDCA claim, that's the sole claim is this whole unauthorized fees language. The district court said, there are no unauthorized fees here. Plaintiff's in default, admitted the default. The deed of trust in the note allowed charging these kind of fees. There's no unauthorized fees. There's no TDCA claim. And I think when you look back at the complaint, that's the answer to that. There's no allegations of damages. How is the estate damaged as a result of that alleged misrepresentation? Even if the payment amount was wrong, how were they harmed? They never paid that amount. They were in default even before that time because of the hard times they had fallen on. So I don't see how paragraph 18 can support any cause of action. Similarly, for that to support a breach of contract, again, what damages are there? And there's no factual allegations building that out to give us any indication of why that wasn't the proper amount charged. Instead, everything here points to that being the correct amount. The second issue is then with paragraph 19, these two letters that came out. That is the sole mention of this issue anywhere in this case, is paragraph 19. It's not discussed in the motion to dismiss briefing. It's not discussed in the briefing here on appeal. There's simply no argument about it anywhere. It appears to be a throwaway paragraph. You're saying nothing later in the complaint tries to make that the basis of any claim? I don't believe so, Your Honor, because even if that came in, I could see that potentially supporting a TDCA claim. That's, I think, where that would fit. But if you look at the TDCA claim, again, the sole allegations are about unauthorized charges. There's no allegations about these two demand letters came in and I was confused and didn't know what to pay. There's nothing like that. And there's no showing of how there were any damages as a result of those letters. Are those letters attached as an exhibit to the complaint? They are not, Your Honor, and they weren't attached to the motion to dismiss either, so we don't have the benefit of what those letters actually said. I have my suspicions that one was most likely the full accelerated balance owed and the other was probably a reinstatement quote, but that's speculation. I don't know. The record doesn't tell us that. But even if we did know that, it's important to note those letters came out in 2011. The attempted foreclosure wasn't even until 2013. So, again, I'm left scratching my head wondering how in the world could those have caused damages, and that's not something that needs discovery to prove up. Those damages would all be on the plaintiff's side of the table and they should be able to explain that to the court and they never have. They've also never raised that in any of the briefing on appeal, so I don't see how those two paragraphs, neither of which were really focused on at all in the briefing or in the specific causes of action, could have any impact on whether claims were stated. I had a lot of these cases on the district court and often there's this dispute about, well, is the transaction history correct? And what I started doing after having them for a while and seeing the time and expense the lawyers and the parties have to engage in and the court has to engage in, I would say, you know what, before we file anything, bank lawyer, send the plaintiff's lawyer a transaction history and plaintiff's lawyer, after you've looked at it, if you think there's something that's incorrect, call the bank's lawyer, let her know. And oftentimes they realize there was nothing wrong and the case went away or maybe they saw there's one or two things we can focus in on. I mean, it just seems like a far more efficient way to actually communicate and give them the transaction history and maybe prevent the time and expense of all this briefing in the circuit, flying to New Orleans for both sides. I don't know, just thoughts for future cases. It seems like the question whether the transaction history is correct is pretty easily resolved if people just have it and look at it, isn't it? I guess that depends on who's looking at the transaction history. I think quite often I can get one and look through it and see, yeah, we did everything right here, or there's a little bit of an issue here we might need to work through. It just depends on who's on the other side of the case. And typically I think the bigger problem we have with these sorts of cases and when you examine this complaint is the form nature of the complaints quite often. It's the same allegations when they don't really apply to the facts. You see that throughout this one. There's references to loan modification discussions, and that even pulled through into the briefing on appeal, but there's no real discussion of any facts about a loan mod. This wasn't really a loan mod case. There's one reference to a loan mod there in Paragraph 18 that they requested a loan modification, but that's it. So I think that's the other problem we see a lot in these cases is that kind of form-driven nature. Your Honors, because this is a 12B6 case, unless you have specific questions about any of the other causes of action, which I would be more than happy to address, but given that it is a 12B6 case, I think the analysis really does begin and end with the complaint. In our briefing, I tried to really pull you back to the complaint and show you what was actually alleged in the complaint with regard to each of the respective causes of action. Let me ask you about something that's not alleged in the complaint but I think was first raised in the motion to dismiss, which is that your client told Page it would not post the property for foreclosure. It was raised in the response to the motion to dismiss. Is that the equivalent, or should that have alerted the district judge to the possibility of the right to amend the complaint to add that? Your Honor, I don't believe so. Here, the plaintiff had already been given an opportunity to amend. We filed our motion to dismiss the original complaint. In response, they requested leave to amend. The district court granted that leave. They filed an amended complaint, which is identical to the original complaint, with the exception of the request for injunctive relief being taken out. At that point, they fully knew what all of our arguments were, our complaints about the sufficiency of the allegations, and in the amended complaint, they didn't bother to address any of them. In addition, when they did not request an opportunity to amend at the trial court, they waived that. That can't be given to them here for the first time on appeal. In the ransom versus national city mortgage case, which is a December 2014 opinion that Chief Judge Stewart was on the panel, they had a similar situation where there was a request for leave to amend being made up at the appeal, but there was not a similar request at the trial court. And that court cited the Greenberg versus Crossroads systems and said that arguments not raised in the district court can't be asserted for the first time on appeal. So I don't think here there's any ground to give a right to amend. Beyond that, even if you were going to consider giving her an opportunity to amend based on the idea that she was told they wouldn't foreclose and then were proceeding anyway, that kind of statement is barred by the statute of frauds. It's an unenforceable oral promise. There's been plenty of cases from this court talking about those kinds of promises not being enforceable under the statute of frauds. And that sort of claim wouldn't support a TDCA claim either. That is, they actually tried to make that into a TDCA claim in their briefing here, and what they argued is that that supported a claim that Chase was taking some action or threatening to take an action that was prohibited by law. But again, there's no showing that Chase would have been prohibited by law from foreclosing. The loan was admittedly in default. The deed of trust provided the right to foreclose. So even if you were to consider allowing an amendment to assert that, it would be futile. So I don't think that helps them out any either. Thank you. Your Honors, I would urge you to go back to the complaint. Look at what's actually alleged. Look at those allegations in light of the standards for each of the causes of action and the various elements. Across the board, it seems to me that there's a damages element missing in every one of these causes of action, and I believe the district court got it right. This is a case that was properly dismissed, applying the Fifth Circuit's Rule 12b-6 pleading standard. Thank you, Your Honors. Thank you. Mr. Peacock, do you have a vote? You can crescendo now, as he said earlier. Thank you, Your Honor. Before I crescendo, I would like to address the issue, the damage issue. My recollection of the court's order dismissing our lawsuit really didn't mention damages. Damages were not an issue. And so I don't think that that's even relevant to our arguments today. But she pointed out a point that I think that, or made a point that I think I should address, and that is where the court said, well, the plaintiff was in default, therefore there were that the lender could tack on some additional charges. Okay. But then the court apparently assumed that the payment could double or more than double because of those additional charges. And so what if the court is wrong on that? What if those additional charges never would have gotten to a doubling or more than doubling of the payment? One of the issues, I think, on Iqbal and Twombly on plausibility is whether, in fact, that would have been, whether it's reasonable to assume in a complaint that that would not have been known to the debtor, that some effort was not made to determine what the, I mean, there's no allegation in the complaint of what the right amount would have been. There's no allegation in the complaint that efforts to determine the correct amount were made and thwarted. Were there? There's not. So it's sort of a freestanding, you don't like the amount, but the complaint doesn't state anything about what, you know, any basis to believe that it was the improper amount, such as J.P. Morgan Chase, not telling you what that's based on? I mean, that's one of the questions. I'm not saying you're wrong, but that's, I think, something you're facing in that argument. Well, I think that's a legitimate problem, but how do we, I mean, even if, let's assume for the moment that Mrs. Page had contacted Chase and said, why are you charging me this amount? And in our pleadings had alleged that. I don't know that that really would make any of the claims any more plausible on their face. I agree that it would indicate more culpability on the part of Chase, but as far as making our claims plausible on their face, I think what I read from the transcript to the court a few minutes ago shows that the increase was sudden and it was unexplained. But what about, I mean, usually this general allegation, you know, usually needs to allege specific facts, not conclusions. So which charges, which amounts do you think were improper? Well, doubling the charges, I mean, doubling the, more than doubling. The payment was $13,000. No, $11,000 was paid in taxes. Right.  It's $1,000 a month. All right. That's $1,000 a month. If you add $1,000 a month to $1,300 a month, you don't get to $3,400. So there again, on its face, there's a problem. And there's enough there to indicate that there's a, even though the cases say we don't have to show a probability, it just has to be plausible. But we even have a probability here that the charges were excessive. And what does that do? That gets us in the door under the Texas Debt Collection Act and breach of contract. Now, where I was going last time in my Christian was just to point out a, what I believe is a relevant example of what we have. For example, if you have two automobiles in a collision case, two automobiles that are approaching the same intersection from different sides, and let's say I'm driving this car and I believe I'm in the intersection first and the other car strikes me. Well, in my pleading, I say simply that I was in the intersection first, therefore I had the right of way and that other car had a duty to stop. I'm giving you a minute to wrap up, Counsel. You ran out, but we took you astray, so. Thank you, Your Honor. You get two to make your best shot. So if I allege that in my petition, I have made a plausible claim, and that's exactly what we have here. We have a situation where the plaintiff is saying, I've been overcharged, I don't know why, and that goes to the heart of it. And that's enough to get us there as far as Rule 8 and Twombly and Ashcroft. And also that overcharge at least makes the inference or suggests that the charges were excessive in violation of the TDCA. So your damage is just these excessive charges? I mean, why would the excessive charges give you a right to stay in the house if you've missed all these, even the payments that are legitimately due? Well, they may or may not. Number one, under the TDCA, a violation, you can also get injunctive relief. We don't have that in our pleadings anymore, but there is an entitlement there. So if we got an affirmative finding under the TDCA, that would enable us. But the problem was is they were foreclosing, and we were being overcharged payments more than twice. So greatly excessive. So as counsel stated, it's in the pleadings, and the case shouldn't have been dismissed. We ask the court to reverse and remand. All right. Thank you, Mr. Peacock. Thank you, Ms. Coutt. We appreciate the briefing and argument. We'll take the case under advisement, along with the rest of the cases from this part of the West courtroom. With that, the panel stands adjourned. Thank you, Your Honor.